Filed 1/27/26  Hutchison v. Lewis Towing 2 CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JACOB HUTCHISON et al., | F088314 |
| Plaintiffs and Respondents, | (Super. Ct. No. BCV-21-100772) |
| v. | |
| LEWIS TOWING 2, INC. et al., | **OPINION** |
| Defendants and Appellants. | |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Bernard C. Barmann, Jr., Judge.

Law Office of Joseph West and Joseph West for Defendants and Appellants.

Lesowitz Gebelin, Steven T. Gebelin; Employees First Labor Law and Jonathan P. LaCour, for Plaintiffs and Respondents.

-ooOoo-

---

[*]     Before Detjen, Acting P. J., Franson, J. and Peña, J.

Plaintiffs are former employees who sued three defendants—two corporations and an individual—for violating California's wage and hour laws, retaliating against whistleblowers, and wrongful termination. After two days of trial, the parties entered into a confidential settlement agreement (1) providing for payments to plaintiffs to resolve their claims, (2) establishing plaintiffs were the prevailing parties for purposes of attorney fees and costs, (3) authorizing plaintiffs to file a noticed motion to recover their fees and costs, and (4) providing the award of fees and costs would be paid within 90 days.

After the motion was filed, the trial court awarded over $600,000 in attorney fees and costs. When the award was not paid within 90 days, plaintiffs filed a motion to enforce the settlement agreement pursuant to Code of Civil Procedure section 664.6.[1] The trial court granted the motion and entered a judgment holding the three defendants jointly and severally liable for the award of attorney fees and costs. As explained below, we reject defendants' contentions that the trial court lacked the power to enter the judgment or erred in determining the settlement agreement was enforceable.

We therefore affirm the judgment.

## FACTS AND PROCEEDINGS

Defendants are Lewis Towing 2, Inc., a California corporation (Lewis Towing); BSF Battery Express, a California corporation (BSF); and Ray Tavakoli, an individual who resides and has his principal place of business in Kern County. Like the parties' settlement agreement, we refer to Lewis Towing, BSF, and Tavakoli collectively as "Defendants." The settlement agreement provides that plaintiff may pierce the corporate veil under an alter ego theory and hold Tavakoli liable for the corporations' payment obligations under the agreement.

---

[1]     Unlabeled statutory references are to the Code of Civil Procedure.

2.

Plaintiffs are Jacob Hutchison, Devon Zubia, Robert Christopher Welch, and Destiny Simmons. Hutchison, Zubia, and Welch worked as tow truck operators for Defendants. Among other things, they allege they were paid a day rate salary of $120 or $132 per day, despite frequently working shifts exceeding 12 hours. Simmons worked as an accounting clerk and dispatcher for Defendants. Like the parties' settlement agreement, we refer to Hutchison, Zubia, Welch, and Simmons collectively as "Plaintiffs."

In April 2021, Plaintiffs filed a complaint against Defendants in Kern County Superior Court. The complaint alleged violations of various Labor Code provisions, including failures to pay minimum wages, to furnish wage and hour statements, to maintain payroll records, to provide meal and rest period compensation, and to pay wages in a timely manner. The complaint also alleged retaliation against whistleblowers, wrongful termination, and unfair competition. Plaintiffs sought to recover unpaid compensation, waiting time penalties, civil penalties under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.), and attorney fees.

In June 2021, Lewis Towing filed an answer. Defaults were entered against Tavakoli and BSF in July and August 2021, respectively.

In July 2022, the trial court entered issue and evidentiary sanctions against Lewis Towing based on its failure to respond to discovery requests as previously ordered by the court. The court's order imposed monetary sanctions of $2,500 against Lewis Towing and its counsel, which was in addition to the monetary sanctions imposed in previous discovery orders.

The court trial began in May 2023. On June 1, 2023, after two days of trial, Plaintiffs and Defendants executed a confidential settlement agreement and general release of all claims. The June 1, 2023 minute order stated (1) a confidential settlement had been reached, (2) the matter was "reported settled as stated on the formal record," (3) the parties agreed Plaintiffs were the prevailing party and could file a motion for attorney

3.

fees and costs, (4) "[t]he Court reserves jurisdiction to enforce the terms of agreement pursuant to [] Code of [Civil] Procedure 664.6," (5) "Plaintiffs to file dismissal for Private Attorney General Act claims without prejudice," and (6) the claims against BSF and Tavakoli "are dismissed with prejudice." The minute order was not signed by a superior court judge.[2]

*Terms of the Settlement*

The settlement agreement used the term "DEFENDANTS" for Lewis Towing, BSF, and Tavakoli; the term "PLAINTIFFS" for Hutchison, Zubia, Welch, and Simmons; and the terms "Party" or "Parties" to refer to Plaintiffs and Defendants, "or one of them, as appropriate." The inclusion of BSF and Tavakoli in the term "DEFENDANTS" is significant to the issues raised in this appeal because many covenants were made "DEFENDANTS," not just Lewis Towing.

Paragraph 1 of the settlement agreement stated "DEFENDANTS shall pay PLAINTIFFS the total sum of" $118,000 and allocated those funds among the four Plaintiffs. It is undisputed that Lewis Towing timely paid this sum to Plaintiffs. Paragraph 1 also stated:

> "The Parties agree [1] to enter into the record a confirmation of this settlement, including informing the Court that the case has settled on confidential terms, [2] Plaintiffs are the prevailing parties and are receiving settlement amounts in excess of their prior settlement offers pursuant to [Code of] Civil [Procedure] section 998, [3] that the agreement includes dismissal of claims against BSF and Tavakoli, and [4] to dismiss Plaintiffs' Private Attorney General Act claims without prejudice."

---

[2] In their appellant's notice designating record on appeal, Judicial Council form APP-003, Defendants chose to proceed "WITHOUT a record of the oral proceedings (what was said at the hearing or trial) in the superior court," including those conducted on June 1, 2023. They marked the box before item 2.a. of the form APP-003, which includes the disclosure "that without a record of the oral proceedings in the superior court, the Court of Appeal will not be able to consider what was said during those proceedings in deciding whether an error was made in the superior court proceedings."

Paragraph 2 of the settlement agreement addressed attorney fees and costs, stating: "The Parties specifically agree that Plaintiffs are the prevailing party for each of the causes of action asserted in Plaintiff's operative complaint and Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs." The parties agreed the amount of fees and costs would be determined by the trial court pursuant to a noticed motion. Paragraph 2 also stated:

> "DEFENDANTS reserve the right to oppose the amounts sought in PLAINTIFFS' motion for attorney's fees and costs, (excluding the right to appeal the Court's ruling on the motion), but will not oppose on the grounds that PLAINTIFFS are not entitled to fees and costs. Payment for the fee award shall be made no less than 90 days after demand by PLAINTIFFS' counsel."

Paragraph 11 stated BSF "express[ly] hereby agrees to unconditionally guarantee the payment of obligations as defined above for PLAINTIFFS' settlement payments and/or the attorney's fees and costs awarded by the court." BSF also agreed that if Lewis Towing did not make the required payments, "a judgment may be entered against one or both of them at that time, whether pursuant to paragraph 13(f) or otherwise."

Paragraph 13(f) stated: "The Parties hereto agree that the Kern County Superior Court shall have jurisdiction to enforce this Agreement pursuant to Code Civ. Proc. Section 664.6." It also stated that in an action or proceeding to rescind or reform the agreement or obtain relief for a breach, "the prevailing party shall recover his or her reasonable attorneys' fees and costs."

Paragraph 12 of the settlement agreement stated that Tavakoli agreed and stipulated "that should Lewis Towing [] and BSF [] fail to make the payment of obligations as defined above for PLAINTIFFS' settlement payments and/or attorney's fees and costs awarded by the court, PLAINTIFFS may pierce the corporate veil under an alter ego theory and/or Labor Code section 558.1 and hold Ray Tavakoli liable for the payment obligations." Tavakoli agreed not to oppose such piercing of the corporate veil

5.

"on any grounds." Paragraph 12's last sentence stated: "Piercing the corporate veil may occur pursuant to a motion pursuant to paragraph 13 (f) or otherwise at PLAINTIFFS' election."

*Motion for Attorney Fees*

In October 2023, Plaintiffs filed their motion for attorney fees and costs. They asserted Defendants should pay $606,370 in attorney fees plus a multiplier of 1.25 along with costs totaling $11,971.07. Although the motion requested an award against Defendants, only Lewis Towing opposed the motion. The opposition asserted the motion was untimely because it had taken Plaintiffs four months to prepare, included 164 pages of billing records, and left defense counsel only 17 days to respond. The opposition asserted the fees should be adjusted downward or not awarded at all due to padding, inefficiency, and duplication of effort. The opposition argued, for example, that the request sought to recover $49,000 for time spent on discovery motions where the court already had imposed monetary sanctions and Plaintiffs' counsel was "trying to double dip."

On November 22, 2023, after hearing argument from counsel, the trial court granted the motion. The court awarded fees in the amount of $599,370 (reduced by $6,000 for fees collected as sanctions) and costs in the amount of $11,971.07. The minute order for the hearing stated: "The Court deems the minute order to be the Order After Hearing." Less than a week later, Plaintiffs' counsel filed and served a notice of ruling, which described the court's order and attached a copy of the minute order.[3]

---

[3] Defendants did not file a notice of appeal challenging the award of fees and costs. (See Cal. Rules of Court, rule 8.104(a) [time to appeal].) The absence of an appeal is consistent with the terms of the settlement agreement, which stated Defendants reserved the right to oppose the amounts sought by Plaintiffs' motion for attorney fees and costs, "excluding the right to appeal the Court's ruling on the motion."

6.

On December 4, 2023, the trial court signed and filed a separate one-page order stating the cause was dismissed with prejudice as to BSF and Tavakoli.

*Motion to Enforce the Settlement*

In March 2024, after expiration of the 90-day period for the payment of the attorney fees and costs, Plaintiffs filed a motion to enforce settlement agreement pursuant to Code of Civil Procedure section 664.6. The motion quoted the statutory provision, described terms of the settlement agreement, and asserted there was no reason to prevent Plaintiffs' recovery of "their full measure of attorneys' fees **from each of the Defendants**, which they explicitly agreed to pay."

Lewis Towing was the only Defendant that filed an opposition to the motion. The opposition asserted the motion to enforce the settlement agreement should be denied because (1) it sought a judgment for attorney fees against defendants who were voluntarily dismissed; (2) Lewis Towing had paid the settlement amount to Plaintiffs according to the agreement; and (3) the motion sought "relief that [wa]s not possible for the court to give." Relying on case law that predated the 1993 amendment of section 664.6, the opposition asserted: "Where parties who agreed on settlement dismissed action before settlement was completed the court has no power to order judgment pursuant to the terms of the settlement. It is a matter of subject matter jurisdiction [Viejo Bancorp, Inc. v. Wood (1989) 217 Cal.App.3d 200, 206.]"

Plaintiffs' reply argued that all three Defendants had explicitly agreed the trial court would retain jurisdiction to enforce the settlement agreement against them and that defense counsel's arguments to the contrary flatly contradicted the terms of the agreement. The reply also asserted the 1993 amendment to section 664.6, which authorized the parties to a settlement to request the retention of jurisdiction by the court, solved the loss-of-jurisdiction problem recognized in *Viejo Bancorp, Inc. v. Wood, supra,* 217 Cal.App.3d 200, abrogated in part by statute. (See Stats. 1993, ch. 768, § 1, p. 4260.)

7.

On April 11, 2024, the trial court held a hearing on Plaintiffs' motion to enforce settlement agreement, announced its tentative ruling, heard argument from counsel, and granted the motion. The minute order states the court directed Plaintiffs' counsel to prepare a formal order consistent with the ruling and California Rules of Court, rule 3.1312, which governs the preparation and submission of a proposed order.

In May 2024, Plaintiffs' counsel submitted a proposed order and judgment. On May 10, 2024, the trial court signed and filed the order and judgment, which stated (1) the motion to enforce the settlement agreement against the three Defendants jointly and severally was granted and (2) Plaintiffs were awarded $649,087.26, which consisted of the November 2023 award of fees and costs plus accrued interest. The court also awarded $8,400 in reasonable attorney fees and $60 in costs incurred in connection with the motion to enforce the settlement agreement.

In July 2024, Defendants filed a notice of appeal from the May 10, 2024 order and judgment.

## DISCUSSION

### I. SECTION 664.6

#### A. <u>Applicable Version of the Statute</u>

The disputes raised in this appeal involve the application of section 664.6 to the parties' settlement agreement. Though not directly addressed in the parties' appellate briefing, the first question we consider is which version of the statute applies to Plaintiffs' motion to enforce. There are two possibilities. The current version was enacted in 2023 and became operative on January 1, 2025. (§ 664.6, subd. (i) [operative date]; Stats. 2023, ch. 478, § 13.) The prior version of the subdivision's text was operative from January 1, 2021, until January 1, 2025. (See Stats. 2020, ch. 290, § 1; Stats. 2023, ch. 478, § 12.)

Paragraph 13(d) of the settlement agreement addressed applicable law by stating the parties agreed "this Agreement is entered into under, and shall be construed under and governed by, the procedural and substantive laws of the State of California *existing as of the date of execution*." (Italics added.) The settlement agreement was signed by the parties on June 1, 2023. We have located no statutory provision that would preclude the enforcement of the parties' contractual provision stating the governing laws were those existing when the agreement was executed. (See § 664.6, subd. (i); Stats. 2023, ch. 478, § 13.) Consequently, we conclude the version of section 664.6 in effect from the start of 2021 and repealed on January 1, 2025, governs the parties' settlement agreement. That is the version applied by the trial court when it decided the motion in 2024. For convenience, the remainder of this opinion refers to the former subdivision (a) of section 664.6 applicable in this case as "section 664.6(a)."

B.      Statutory Text

Section 664.6(a) provides:

> "If parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." (Stats. 2023, ch. 478, § 12.)

Defendants' arguments about the lack of power to enforce the settlement agreement against the dismissed defendants raises issues involving the application of the second sentence. That sentence was added to the statute in 1993. (Stats. 1993, ch. 768, § 1, p. 4260; see *Eagle Fire & Water Restoration, Inc. v. City of Dinuba* (2024) 102 Cal.App.5th 448, 459 (*Eagle Fire*).) Before addressing the power conferred by that sentence, we provide a brief overview of section 664.6(a)'s purpose.

9.

C.      Statutory Purpose

Prior to the enactment of section 664.6, expeditious enforcement of a settlement agreement was not always possible.  (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 798, 809 (*Weddington*).)  At that time, a party seeking to enforce a settlement agreement had to file a new lawsuit alleging a breach of the settlement contract and requesting either specific performance of the settlement terms or damages.  Alternatively, the party could file supplemental pleadings in a pending lawsuit.  In either situation, obtaining a summary judgment was possible only if the opposing party did not raise a triable issue of material fact.  (*Ibid*.)

These cumbersome enforcement mechanisms were addressed by section 664.6, which established a summary procedure for specifically enforcing a settlement agreement without the need for a new lawsuit or additional pleadings.  (*Weddington*, *supra*, 60 Cal.App.4th at p. 809.)  When a motion to enforce a settlement is brought under section 664.6, the trial court may receive evidence, determine disputed facts, and enter the terms of the settlement agreement as a judgment.  (*Weddington, supra,* at p. 809.)

D.      1993 Amendment Allowing Courts to Retain Jurisdiction

The second sentence addressing the retention of jurisdiction was added to section 664.6(a) to solve "the problem presented in *Viejo Bancorp*, where the trial court lost jurisdiction of a case, and hence the ability to enforce a settlement agreement, because the terms of the stipulated settlement required or contemplated that the case would be dismissed." (*Wackeen v. Malis* (2002) 97 Cal.App.4th 429, 439 (*Wackeen*).)  The court in *Wackeen* interpreted the second sentence to mean "that even though a settlement may call for a case to be dismissed, or the plaintiff may dismiss the suit of its own accord, the court may nevertheless retain jurisdiction to enforce the terms of the settlement, until such time as all of its terms have been performed by the parties, *if the parties have requested this specific retention of jurisdiction*." (*Ibid*.)  The court addressed the type of jurisdiction retained by concluding the statute authorized the "retention of jurisdiction

10.

over both the parties and the case itself, that is, both personal and subject matter jurisdiction." (*Ibid.*)[4]  Consequently, after the 1993 amendment, trial courts generally could " 'enter judgment pursuant to a settlement agreement despite the dismissal of the complaint, which ordinarily deprives the court of continuing jurisdiction.' " (*Eagle Fire*, *supra*, 102 Cal.App.5th at p. 458, quoting *Howeth v. Coffelt* (2017) 18 Cal.App.5th 126, 134.)

E.     Application of Section 664.6(a) to Dismissed Defendants

Defendants contend the trial court erred in entering judgment against the dismissed defendants, BSF and Tavakoli.  Defendants assert the settlement agreement provided for the dismissal of BSF and Tavakoli; the trial court entered a judgment of dismissal on June 1, 2023;[5] once the judgment was entered, the trial court lost the power to change it; and the dismissal order signed and filed in December 2023 was entered before Plaintiffs brought their motion to enforce the settlement agreement.  Defendants' opening brief contends that, in these circumstances, "the court was powerless to enter any order or judgment against the previously dismissed parties."  The opening brief also makes the general claim that "the subsequent judgment entered on May 10, 2024 is void for lack of subject matter jurisdiction."

[4]     The statutory construction adopted in *Wackeen* is relevant to this appeal, but we reach a different outcome due to differences in the terms of the settlement agreements and procedural history.  In *Wackeen*, the court reversed the orders enforcing the settlement agreement because (1) the agreement did not include "a clear request for continued jurisdiction for purposes of enforcing the settlement agreement" (*Wackeen*, *supra*, 97 Cal.App.4th at p. 441) and (2) the trial court had lost subject matter "jurisdiction over the case when the last of the requests for dismissal was filed." (*Ibid.*)

[5]     The date given is not accurate.  The record includes the register of actions, which contains no reference to a judgment of dismissal entered on June 1, 2023.  The June 1, 2023 minute order does not use the word "judgment" and does not purport to be one. Further, because the minute order is not "a written order signed by the court," it does not constitute a judgment pursuant to section 581d.  In contrast, the December 4, 2023 order dismissing BSF and Tavakoli was signed by the court and, pursuant to section 581d, it is deemed to constitute a judgment.

11.

In their reply brief, Defendants appear to abandon this jurisdictional argument. There, they state: "The issue is not over jurisdiction but enforceability of the settlement agreement." Nonetheless, we address the power conferred on the trial court by section 664.6(a) because that power provides the foundation for the court's order enforcing the settlement agreement.

Defendants' argument suggests that when section 664.6(a) is properly interpreted and applied to the facts of this case, the statute did not grant the trial court the power (i.e., authority) to enter a judgment pursuant to the terms of a settlement agreement. More specifically, Defendants' argument suggests that section 664.6(a) did not authorize a court to enter a judgment against a defendant who had been dismissed with prejudice after the settlement agreement was executed. We reject that statutory interpretation for three reasons.

First, Defendants' appellate briefing cites no case concluding the jurisdiction retained pursuant to the second sentence of section 664.6(a) does not extend to parties who are dismissed with prejudice. Second, the language used in section 664.6(a) did not expressly limit the jurisdiction retained at the parties' request or distinguish between defendants that are dismissed with prejudice and those dismissed without prejudice. Third, implying such a limitation is inappropriate because it would hinder rather than promote section 664.6(a)'s purpose of providing an efficient mechanism for the enforcement of settlement agreements. If defendants dismissed with prejudice fall outside the scope of section 664.6(a), then plaintiffs would have to either resort to a separate lawsuit or file new pleadings to enforce the settlement. Defendants have offered no policy justification for treating the two categories of dismissed defendants differently and, as a result, have identified no policy reason that outweighs the impediment to efficiently enforcing settlement agreements against defendants who are dismissed with prejudice.

12.

Consequently, we join other courts interpreting the second sentence of section 664.6(a) to mean that, if the parties to a settlement agreement requested the court to retain jurisdiction to enforce the settlement agreement, the trial court had both personal jurisdiction over the parties and subject matter jurisdiction over the agreement. (See *Wackeen*, *supra*, 97 Cal.App.4th at p. 439.) We further conclude the foregoing interpretation of the scope of the jurisdiction retained pursuant to section 664.6(a) is not subject to an exception for defendants dismissed with prejudice. Stated another way, the retention of jurisdiction under section 664.6(a) takes precedent over the general rules that (1) the dismissal of a defendant terminates the court's jurisdiction over that defendant (see *Sere v. McGovern* (1884) 65 Cal. 244, 245–246) and (2) the dismissal of an action terminates the trial court's jurisdiction over the parties and the subject matter (*Wackeen*, *supra*, at p. 437). Under California's canons of statutory construction, "[a] specific provision relating to a particular subject will govern a general provision, even though the general provision standing alone would be broad enough to include the subject to which the specific provision relates." (*People v. Tanner* (1979) 24 Cal.3d 514, 521.)

In sum, section 664.6(a) granted the trial court the authority to enforce the settlement agreement by "enter[ing] judgment pursuant to the terms of the settlement." Having determined the scope of the trial court's statutory authority, we next consider the contractual issues raised by Defendants. Those issues include what "the terms of the settlement" agreement meant (§ 664.6(a)) and, more fundamentally, whether the parties formed an enforceable settlement agreement.

II.     ENFORCEABILITY OF THE SETTLEMENT AGREEMENT

Initially, we note the settlement agreement did not attempt to limit the statutory jurisdiction or authority retained by the court. Paragraph 13(f) of the settlement agreement simply stated that the "Parties"—meaning each Plaintiff and each Defendant—agreed "the Kern County Superior Court shall have jurisdiction to enforce

this Agreement pursuant to Code Civ. Proc. section 664.6." In other words, it is not reasonable to interpret "Parties" to exclude the dismissed Defendants. Thus, the agreement's text establishes the jurisdiction retained by agreement and the jurisdiction granted by the statute were one and the same—that is, it encompassed Lewis Towing and the Defendants dismissed with prejudice. Next, we consider Defendants' arguments about the enforceability of the settlement agreement.

A.    Formation of an Enforceable Contract

A trial court addressing a section 664.6 motion must determine whether the parties entered into an enforceable settlement—that is, whether the settlement agreement is valid and binding. (*Eagle Fire*, *supra*, 102 Cal.App.5th at p. 467.) This determination is governed by the rules of law applicable to the formation of contracts generally. (*Id*. at pp. 467–468.)

California's basic requirements for an enforceable contract are (1) parties capable of contracting, (2) the consent of those parties, (3) a lawful object, and (4) adequate consideration. (Civ. Code, § 1550.) The consent of the parties to a contract must be free, mutual, and communicated by each to the other. (Civ. Code, §§ 1565, 1581.) The existence of mutual consent is a question of fact. (*Eagle Fire*, *supra*, 102 Cal.App.5th at p. 468.) Courts interpreting a contract must "give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, § 1636.) The parties' mutual consent (i.e., mutual intention) is determined under an objective standard—that is, the reasonable meaning of the parties' words; it is not determined by silent intentions kept from the other parties. (*Eagle Fire*, *supra*, at p. 468; Civ. Code, § 1638.) To ascertain the parties' mutual intention, courts consider the agreement as a whole, the circumstances under which it was made, and the matter to which it relates. (Civ. Code, §§ 1641, 1647.)

In *Eagle Fire*, this court discussed the relationship between mutual consent and the legal concepts of materiality and certainty. (*Eagle Fire*, *supra*, 102 Cal.App.5th at pp. 468–469.) A settlement agreement is enforceable only if there is mutual consent to all material terms. "Whether a term is material—that is, essential to the existence of an enforceable agreement—'depends on its relative importance to the parties and whether its absence would make enforcing the remainder of the contract unfair to either party.' " (*Id.* at p. 468.) In addition, an enforceable settlement agreement requires terms that are " 'reasonably well defined and certain.' " (*Ibid.*)

## B.     Lack of Express Findings and Legal Rationale

Before addressing Defendants' arguments that material terms of the settlement agreement are uncertain and, thus, the agreement is unenforceable, we consider a procedural issue that Defendants might be asserting as a ground for reversal. Defendants' opening brief faults the trial court because it gave "no statement of decision or minute order that reflects any of the bas[e]s for the ruling on May 10, 2024." Defendants assert "[t]here is nothing in the record that confirms the court made a determination that the agreement is enforceable, valid and binding, or on what basis if any the court adjudicated the conflicting terms or interpreted the conflicting terms." Defendants describe the "conflicting terms" as "the conflict between dismissing parties and whether the court may then enter judgment against them."

The fact there is nothing in the appellate record confirming that the trial court considered and resolved the issues raised by Defendants might be due to the choices made by Defendants in designating the record. The court may have orally stated its findings and legal analysis during the April 11, 2024 hearing on the motion to enforce the settlement agreement. We cannot determine whether or not this occurred because there is no record of the hearing's oral proceedings. In particular, there is no reporter's transcript, agreed statement, or settled statement of the April 11, 2024 oral proceedings. (See Cal.

15.

Rules of Court, rules 8.120(b)(1)-(3), 8.130 [reporter's transcript], 8.135 [agreed statement], 8.137 [settled statement].)

Furthermore, documents included in the appellate record—specifically, the minute order for the hearing and the judgment and order filed after the hearing—do not foreclose the possibility that the court stated its rationale in open court. The April 11, 2024 minute order shows the trial court announced a tentative ruling at that hearing, heard argument, granted the motion, and directed Plaintiffs' counsel to prepare a formal order. The order and judgment prepared by Plaintiffs' counsel and signed by the court did not include the court's rationale. The preamble of the order and judgment described the appearances made at the hearing and then stated: "The Court granted the motion after considering the submissions and arguments by all parties' counsel." Thus, the minute order and the order and judgment do not set forth the trial court's reasons for granting the motion and, moreover, do not establish that the court did not state its reasons orally.

Faced with this uncertainty about what the trial court did, we turn to the fundamental principles of appellate procedure. These principles are well established and are derived from California's constitutional doctrine of reversible error. (See Cal. Const., art. VI, § 13.) An order or judgment of the trial court is presumed correct, all intendments and presumptions are indulged to support it on matters as to which the record is silent, and the appellant must affirmatively demonstrate prejudicial error. (*Herrera v. Doctors Medical Center of Modesto, Inc.* (2021) 67 Cal.App.5th 538, 546 (*Herrera*), citing *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) To affirmatively demonstrate error, appellants must, among other things, provide an adequate record on appeal and comply with certain briefing requirements in California Rules of Court, rule 8.204. (*Herrera*, *supra*, at p. 546; see *Jameson v. Desta* (2018) 5 Cal.5th 594, 609.)

Because Defendants did not provide this court with a record of the April 11, 2024 oral proceedings, they have failed to establish that the trial court did not provide the parties with findings and legal analysis to support its decision to enforce the settlement

16.

agreement. Maybe the court did so and maybe it did not. Without a record of those proceedings, we are compelled by applicable law to presume the court stated the reasons for its decision and reject Defendants' assertion that no reasons were provided. (*Herrera*, *supra*, 67 Cal.App.5th at p. 547 [failure to provide an adequate record on an issue requires the issue to be resolved against the appellant]; *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 185 [inadequate record was fatal to the appeal].)

A second, independent legal ground for rejecting Defendants' claim of trial court error is that Defendants have cited no authority requiring a trial court to issue a statement of decision or otherwise provide explicit factual findings, legal analysis, or both, when deciding a motion to enforce a settlement pursuant to section 664.6(a). Such a requirement is not contained in the statute itself, and our independent review has located no authority stating such a requirement applies to a section 664.6(a) motion. Our independent review has, however, considered the general rule that a trial court is not required to make explicit findings when it decides a motion. (See *Robinson v. Superior Court* (2023) 88 Cal.App.5th 1144, 1168.) We conclude this general rule applies to motions to enforce settlement agreements pursuant to section 664.6(a) and, when the record is silent as to the trial court's determinations, appellate courts infer the trial court made implied factual findings and legal determinations that support its order. (See *Eagle Fire*, *supra*, 102 Cal.App.5th at p. 472 [substantial evidence supported trial court's implied findings regarding material terms of the settlement agreement].)

C.      Enforceability and Uncertainty

Defendants' opening brief contends the trial court was required to "decide what terms the parties agreed on and not create terms" and, "[w]hen a settlement agreement is so ambiguous as to require adjudication between conflicting views of unspecified material terms, rather than mere interpretation, the agreement is unenforceable and any judgment thereon is reversible." In Defendants' view, it is clear there were conflicting

terms in the settlement agreement because it expressly called for dismissal of BSF and Tavakoli and included personal guaranty and alter ego provisions as to those Defendants.

Defendants' reply brief restated this argument by asserting there was an inconsistency in the settlement agreement terms that called for the dismissal of BSF and Tavakoli and the terms that "no judgment would be entered against these defendants." Under Defendants' interpretation, the "agreement only called for BSF and Tavakoli to guarantee or be subject to alter ego respectively any judgment that Defendant Lewis Towing 2 Inc. might be liable for. Separate additional action would have to be taken to achieve such results which did not happen in this case."

### 1. *Entry of Judgment Against BSF and Tavakoli*

First, we address the interpretation that the settlement agreement provided that "no judgment would be entered against" BSF. Section 11 of the settlement agreement began: "Although a judgment is not being entered into against BSF … *at the time of the execution of this agreement*, BSF … hereby agrees to unconditionally guarantee the payment of [the] settlement payments and/or the attorney's fees and costs awarded by the court." (Italics added.) The prepositional phrase "at the time of the execution of this agreement" limits the statement that a judgment is not being entered against BSF and leaves open the possibility that a judgment could be entered against BSF later—that is, *after* "the execution of this agreement." The possibility of a later judgment is addressed by the last sentence of paragraph 11 of the settlement agreement, which provides that if Lewis Towing failed to make a specified payment, BSF "jointly and severally guarantee said payments and a *judgment* may be entered against one or both of them *at that time*, whether pursuant to paragraph 13(f) or otherwise." (Italics added.) This language unambiguously provides for a judgment against BSF *and* Lewis Towing to be entered later—specifically, at the time when a specified payment is not made. The language also identifies the mechanisms for obtaining entry of the judgment by stating the judgment

18.

may be entered pursuant to paragraph 13(f) or otherwise. In turn, paragraph 13(f) provides for the enforcement of the settlement agreement pursuant to section 664.6(a). Because section 664.6(a) authorizes a trial court to enter a judgment to enforce a settlement agreement, it necessarily follows that the settlement agreement enabled Plaintiffs to obtain a judgment pursuant to a motion under section 664.6. In other words, we conclude an objectively reasonable person, considering the agreement as a whole and reading it in the legal context created by section 664.6(a), would understand the agreement to authorize Plaintiffs to obtain a judgment against both BSF and Lewis Towing, if the award of attorney fees and costs was not paid within the 90 days specified by the agreement. In sum, Defendants' contention that the settlement agreement provided that no judgment would be entered against BSF misinterprets both how and when the settlement agreement could be enforced pursuant to section 664.6(a).

Second, we address Defendants' contention that the settlement agreement provided that "no judgment would be entered against" Tavakoli. Paragraph 12 of the settlement agreement stated Tavakoli agreed Plaintiffs could pierce the corporate veil and hold him "liable for the payment obligations of Lewis Towing … and/or BSF" if those entities failed to make the payments defined in the agreement. It is significant that the agreement referred to "the payment of obligations" and did not restrict the use of an alter ego theory to pierce the corporate veil to obtain payment of *a judgment*. Thus, paragraph 12 does not require Plaintiffs to obtain a judgment against Lewis Towing, BSF, or both as a condition precedent to seeking to hold Tavakoli liable for the unpaid obligations.

Furthermore, paragraph 12 explicitly addressed the timing for holding Tavakoli liable by stating the representation about piercing the corporate veil under an alter ego theory was a material term of the agreement that "may be relied upon by Plaintiffs *at any time to enforce this section*." (Italics added.) The phrase "at any time to enforce this section" does not limit *when* Plaintiffs may seek to hold Tavakoli liable for the unpaid obligations. The only condition relating to timing is that Tavakoli cannot be liable for the

19.

award of attorney fees and costs until after the 90-day period for paying the award has expired.

To summarize, it is not reasonable to interpret the text of paragraph 12 of the settlement agreement to require Plaintiffs to obtain a judgment against Lewis Towing, BSF, or both *before* Plaintiffs could enforce the settlement agreement and hold Tavakoli liable for unpaid obligations by bringing a section 664.6(a) motion. Rather, the settlement agreement allows Plaintiffs to bring one motion under section 664.6(a) and to obtain a single judgment against all three Defendants.

### 2. Entry of Judgment Against Dismissed Defendants

Next, we consider Defendants' claim that the dismissal of BSF and Tavakoli was inconsistent with BSF's guaranty in paragraph 11 and the alter ego provisions in paragraph 12 of the settlement agreement. We reject this theory of inconsistency because, as explained in part I. of this opinion, courts have the power pursuant to section 664.6(a) to enter a judgment against a dismissed defendant if the settlement agreement states the court has retained jurisdiction. Stated another way, dismissed defendants can agree that, if the terms of the settlement agreement are not performed, the court may enforce those terms by entering a judgment against the dismissed defendants.

In summary, we reject Defendants' contention that the settlement agreement is too ambiguous or internally inconsistent to be enforced. The settlement agreement allowed the court to enforce its terms by entering a single judgment against Lewis Towing, BSF, and Tavakoli pursuant to a motion filed under section 664.6(a).

III.    CHALLENGE TO THE AMOUNT OF ATTORNEY FEES AWARDED

Defendants contend the trial court abused its discretion in awarding attorney fees in the amount of $599,370. They assert Lewis Towing opposed the fee motion in the trial court on the grounds that the fees were excessive, there was padding and duplication of fees, and the hourly rates were excessive.

20.

In response, Plaintiffs assert Defendants waived their right to appeal the award of attorney fees and costs. Paragraph 2 of the settlement agreement stated in relevant part: "DEFENDANTS reserve the right to oppose the amounts sought in PLAINTIFFS' motion for attorney's fees and costs, (*excluding the right to appeal the Court's ruling on the motion*), but will not oppose on the grounds that PLAINTIFFS are not entitled to fees and costs." (Italics added.) We conclude the italicized clause is not ambiguous. By excluding the right to appeal from the rights expressly reserved, Defendants relinquished their right to appeal the order awarding attorney fees. We note that, consistent with the plain meaning of the clause, Defendants did not file a timely notice of appeal challenging the trial court's order awarding attorney fees and costs.

Defendants' opening and reply briefs did not address the meaning of the clause that excluded the right to appeal from the rights reserved by Defendants. Because California law allows a party to expressly waive the right to appeal, subject to a few conditions (*PG&E "San Bruno Fire" Cases* (2019) 43 Cal.App.5th 596, 607), and Defendants have not argued that any of these conditions were not met in this case, we conclude Defendants waived the right to appeal the award of attorney fees.

Consequently, we do not address the other three grounds raised by Plaintiffs for rejecting Defendants' challenge to the amount of the fee award. Furthermore, after the issuance of remittitur, Plaintiffs may seek an award of reasonable attorney fees incurred in this appeal in accordance with California Rules of Court, rule 3.1702(c). (See Cal. Rules of Court, rule 8.278(c)(1), (d)(2); Civ. Code, § 1717.)

**DISPOSITION**

The order and judgment filed on May 10, 2024, is affirmed. Plaintiffs are the prevailing parties in this appeal and shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278.)